RECEIVED
DEC 18 2025
CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

**ST. PAUL DIVISION**

25-cv-4704-KMM/LIB

AHMED SALAH HAJI,

Plaintiff,

v.

MINNESOTA DEPARTMENT OF CORRECTIONS, via its Commissioner and appropriate supervisory officials in their official capacities;

SGT. BONOVSKY;

SGT. THIEBAR;

OFFICER MATTHEW CAPKO;

OFFICER MAXWELL HARTMAN;

OFFICER GROSS;

LT. JESSICA VANLOY;

LT. JESSICA HINNENKAMP;

JOHN AND JANE DOES 1–10, whose true identities are unknown;

Defendants.

SCANNED
DEC 18 2025
U.S. DISTRICT COURT ST. PAUL

Civil No. __________

---

**COMPLAINT**

(42 U.S.C. § 1983, First & Eighth Amendments, RLUIPA, and Minnesota Law)

Plaintiff Ahmed Salah Haji ("Plaintiff"), proceeding pro se, brings this civil action against the Minnesota Department of Corrections ("DOC") and the above-named Defendants in their individual and official capacities and alleges as follows:

---

## I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, the First and Eighth Amendments, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.
2. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.
3. Venue is proper in this District under 28 U.S.C. § 1391(b) because all events giving rise to these claims occurred within the District of Minnesota, at Minnesota Correctional Facility–St. Cloud ("MCF–St. Cloud").

---

## II. PARTIES

4. Plaintiff Ahmed Salah Haji is a practicing Muslim. At all relevant times he was incarcerated at MCF–St. Cloud. He now resides in Minnesota and is on parole. Plaintiff sues individual Defendants in their individual capacities for damages and, where applicable, in their official capacities for declaratory and injunctive relief.
5. Defendant Minnesota Department of Corrections is a state agency responsible for operating MCF–St. Cloud and for establishing, implementing, and enforcing policies governing searches, staff conduct, PREA compliance, and inmate safety. The DOC is sued for declaratory and injunctive relief and for state-law claims pursuant to Minn. Stat. § 3.736.
6. Defendants Sgt. Bonovsky, Sgt. Thiebar, Officer Matthew Capko, Officer Maxwell Hartman, Officer Gross, Lt. Jessica Vanloy, Lt. Jessica Hinnenkamp, and John and Jane Does 1–10 were correctional employees of the DOC acting under color of state law at all relevant times.

---

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff fully exhausted all available administrative remedies as required by 42 U.S.C. § 1997e(a). Plaintiff timely filed PREA complaints and institutional grievances following each incident, pursued appeals through the complete chain of command up to Central Office review, and received written PREA

determinations and grievance appeal responses. No further administrative remedies remained available.

---

## IV. FACTUAL ALLEGATIONS

### A. February 27, 2024 – Sexual Humiliation and Forced Nudity

8. On February 27, 2024, Plaintiff was transported to segregation for suspected intoxication. Upon arrival, he agreed to comply with a strip search. Plaintiff removed his clothing and stood naked as instructed.
9. Sgt. Bonovsky positioned himself directly in front of Plaintiff while another officer stood behind Plaintiff. Plaintiff complied with the first "bend and spread" command and again complied when ordered to repeat the maneuver a second and third time.
10. Sgt. Bonovsky then ordered a fourth "bend and spread" despite Plaintiff's full compliance. Bonovsky's position at Plaintiff's front prevented him from viewing Plaintiff's anal cavity. Plaintiff perceived Bonovsky's repeated commands and wrist-rotating gestures near his waistband as sexual and taunting. Plaintiff questioned the purpose of the fourth command. Officers immediately slammed Plaintiff on to the bunk,Plaintiff a was immediately put in hand restraints.
11. While Plaintiff was restrained and nude, Sgt. Bonovsky asked the officer positioned behind Plaintiff whether any part of the search remained. That officer responded that only the "mouth cavity" remained, confirming that the anal cavity portion of the search had already been completed. Plaintiff opened

his mouth and lifted his tongue as directed. No officer physically spread Plaintiff's buttocks at any time, underscoring that the repeated commands served no legitimate security purpose.

---

**B. Unnecessary Cross-Gender Exposure**

12. Minnesota DOC search policy requires staff to conduct searches using the least intrusive means necessary and in a manner that avoids unnecessary embarrassment, humiliation, or indignity, with due regard for inmate privacy.

13. Contrary to these requirements, Defendants subjected Plaintiff to unnecessary and prolonged exposure after the strip-search procedures were complete by forcing him, while handcuffed and fully nude to remain visible to multiple staff members, with no involvement in the search including female staff. No exigent circumstance or legitimate security justification existed to prolong Plaintiff's exposure once the search had concluded.

---

**C. Prolonged Nudity and Degrading Medical Assessment**

14. After the strip search, officers escorted Plaintiff through corridors approximately 20 feet while he remained naked and visible to staff, including female staff, and placed him in a quiet cell. Plaintiff stood completely naked. Only shortly before a female nurse arrived was Plaintiff given a pair of underwear.

15. Plaintiff was then required to undergo a medical assessment while half-naked in the presence of a female nurse. Full clothing was not provided until after the nurse left. The prolonged nudity, lack of privacy, and cross-gender exposure served no security purpose and were punitive and degrading.

16. Plaintiff is a practicing Muslim whose faith requires bodily modesty and prohibits exposure of his private parts to unrelated persons, particularly cross-gender staff. The forced exposure violated Plaintiff's sincerely held religious beliefs and caused humiliation and emotional distress.

---

**D. Plaintiff's Intoxication and Exploitation of Vulnerability**

17. DOC records reflect that Plaintiff was intoxicated and incoherent when taken to segregation. Under DOC policy principles and PREA-related training expectations, such a condition undermines any claim of voluntary consent to sexualized exposure, prolonged nudity, or degrading treatment.

18. Despite this vulnerability, Lt. Hinnenkamp later concluded in PREA findings that Plaintiff "consented" to the search conditions, disregarding Plaintiff's intoxicated state and the inherent power imbalance between staff and inmates.

19. Plaintiff reported the February 27 incident the following morning through a PREA complaint and written communications, stating that he felt unsafe around the staff involved and requesting separation and retaliation monitoring.

---

**E. March 25–26, 2024 – Retaliation and Coercive Search**

20. On March 25, 2024, Officer Capko issued Plaintiff a Loss of Privileges ("LOP") sanction for conduct Plaintiff did not commit. Plaintiff reasonably believed the sanction was retaliatory because Capko had been named in Plaintiff's PREA complaint.

21. Plaintiff appealed the LOP to Sgt. Thiebar, explained that Capko was involved in an open PREA matter, and requested separation and Crisis Intervention Team ("CIT") assistance due to panic and fear. Sgt. Thiebar denied the appeal, denied separation, and refused to summon CIT assistance.

22. Later that evening, fearing for his safety and facing threats from other inmates, Plaintiff engaged in minor disruptive conduct in an attempt to be moved to segregation. Staff assembled an escort team that included Defendants Capko and Hartman, who singed off on the incident report, despite Plaintiff's known fear of those officers.

23. During intake, Plaintiff repeatedly stated that he would comply with all search procedures and emphasized that he sought protection. An assisting officer began a pat-search. Sgt. Thiebar halted the search and ordered Plaintiff to face him while the pat-search continued. Thiebar threatened punishment if Plaintiff did not face him during the search. Forcing eye contact during a pat-search served no legitimate purpose and was intended to intimidate and degrade Plaintiff.

24. Plaintiff was placed in a temporary quiet cell and provided bedding that was visibly soiled and unsanitary. Plaintiff showed the condition of the bedding to

the camera and requested clean linens. Staff delayed replacement for hours, and Plaintiff spent the night in the quiet cell rather than being promptly moved, contrary to normal practice.

25. Plaintiff later received approximately fifteen days of segregation as discipline. Plaintiffs whole objective was to remain in what he viewed to be safe environment.Separated from all staff that were present in the February incident,

---

**F. Failure to Protect and Ongoing Risk**

26. Despite Plaintiff's PREA complaint and repeated requests for separation, DOC supervisors continued to assign Defendants Capko and Hartman to Plaintiff's housing area. Plaintiff remained in daily contact with staff he had accused of sexual misconduct, causing ongoing fear and psychological distress.

---

## V. CLAIMS FOR RELIEF

### Count I – Eighth Amendment: Cruel and Unusual Punishment

27. Defendants subjected Plaintiff to sexual humiliation, forced nudity, unnecessary force, and degrading treatment without legitimate penological purpose, in violation of the Eighth Amendment.

### Count II – First Amendment: Retaliation

28. Plaintiff engaged in protected activity by filing PREA complaints and grievances. Defendants retaliated by issuing false discipline, denying protection and mental-health assistance, and subjecting Plaintiff to humiliating searches.

**Count III – Eighth Amendment: Failure to Protect**

29. Defendants knew of and disregarded a substantial risk of harm to Plaintiff by allowing staff accused of sexual misconduct to continue supervising and escorting him.

**Count IV – Failure to Intervene**

30. Defendants observed constitutional violations and had a realistic opportunity to intervene but failed to do so.

**Count V – First Amendment and RLUIPA: Free Exercise of Religion**

31. Defendants substantially burdened Plaintiff's religious exercise through forced nudity and cross-gender exposure that were not the least restrictive means of achieving a compelling governmental interest.

**Count VI – Supervisory Liability (42 U.S.C. § 1983)**

32. Supervisory Defendants were on notice of Plaintiff's complaints and failed to train, supervise, or correct unconstitutional practices.

**Count VII – State-Law Tort Claims and Vicarious Liability**

33. Defendants committed assault, battery, negligence, and intentional and negligent infliction of emotional distress within the scope of employment, rendering the State vicariously liable under Minn. Stat. § 3.736.

---

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests:

a. Compensatory damages;

b. Punitive damages against individual Defendants;

c. Declaratory relief;

d. Injunctive relief requiring PREA-compliant separation and anti-retaliation measures;

e. Costs and nominal damages; and

f. Any other relief the Court deems just and proper.

---

## VII. JURY DEMAND

Plaintiff demands a jury trial on all triable issues.

---

Respectfully submitted,

Ahmed Salah Haji

Ahmed Salah Haji

Plaintiff, pro se

Dated: 12-18-2025